UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DIANE McLEAR

         Plaintiff    DECISION AND ORDER

-vs-
                1:18-CV-1170 CJS

ANDREW M. SAUL,
Commissioner of Social Security,

         Defendant.
_____

APPEARANCES

| | |
|---|---|
| For the Plaintiff: | Anthony J. Rooney |
| | Kenneth R. Hiller |
| | Law Offices of Kenneth R. Hiller PPLC |
| | 6000 North Bailey Avenue, Suite 1A |
| | Amherst, New York 14226 |
| | |
| For the Defendant: | Kristina D. Cohn |
| | Social Security Administration |
| | Office of General Counsel |
| | 26 Federal Plaza, Room 3904 |
| | New York, New York 10278 |
| | |
| | Dennis J. Canning |
| | Meghan J. McEvoy |
| | Office of the General Counsel |
| | Social Security Administration |
| | 601 E. 12th Street, Room 965 |
| | Kansas City, Missouri 64106 |

INTRODUCTION

  This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied the application of Diane McLear ("Plaintiff") for Social Security Disability

1

Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits. Now before the Court is Plaintiff's motion (ECF No. 9) for judgment on the pleadings and Defendant's cross-motion (ECF No. 16) for the same relief. For the reasons discussed below, Plaintiff's application is denied, Defendant's application is granted, and this action is dismissed.

FACTUAL BACKGROUND

The reader is presumed to be familiar with the facts and lengthy procedural history of this action.[1] The Court will summarize the record only as necessary for purposes of this Decision and Order.

The instant action focuses on a decision issued on July 18, 2018, by an Administrative Law Judge ("ALJ"), finding that Plaintiff was not disabled at any relevant time. (R. 337–351).[2] The decision was issued following a hearing on April 3, 2018, at which Plaintiff was represented by counsel, and at which testimony was taken from Plaintiff and a vocational expert ("VE"). (R. 463).

At the start of the hearing, Plaintiff's attorney stated that the medical record was not complete because she was still waiting to receive updated records from one provider, "Gastroenterology Associates." (R. 466). The ALJ pointed out, though, that it appeared the record was also missing updated records from another provider, Buffalo Medical Group. (R. 469). The ALJ stated, however, that the attorney had not given proper notice of the additional evidence "five days or more" prior to the hearing, as required by SSR 17-4p and regulations, 20 CFR § § 404.935(a) & 416.1435(a). (466-467). In the regard, the

---

[1] *See, e.g.*, Pl. Mem. of Law, ECF No. 9-1 at p 2.
[2] Unless otherwise noted citations are to the Administrative Record ("R".).

ALJ stated that while the attorney had sent a general letter indicating that there was some outstanding evidence, the letter had not identified the evidence or explained how it related to Plaintiff's claim. The ALJ asked Plaintiff's attorney if there was any exception that would allow the late receipt of the records, referring to 20 CFR § § 404.935(b) & 416.1435(b). (469-470). The attorney did not articulate any applicable exception to the rules' notice requirements. (R. 470-471). Nevertheless, the ALJ told the attorney that she could submit a brief within five days from the date of the hearing, arguing why the records should be admitted. (R. 471). Subsequently, on April 10, 2018, Plaintiff's attorney submitted a post-hearing letter brief regarding the records from Gastroenterology Associates and Buffalo Medical Group. (R. 723-724). Counsel indicated that her office had requested records from those providers on March 12, 2018, and February 19, 2018, respectively, and that the delay in receiving them was due to circumstances beyond counsel's control, within the meaning of 20 CFR § § 405.331(b)(3) & (c)(3). (R. 723-724). The brief further indicated that the records pertained to Plaintiff's "physical impairments," but did not provide any additional detail. Indeed, counsel indicated that it was impossible to know what information was contained in the records, but that since the records were from treating sources, there was a reasonable possibility that the records could affect the ALJ's decision. (R. 724).

During the hearing, Plaintiff indicated that what primarily prevented her from working was pain in her lower back and hips. (R. 483). Plaintiff stated that she could sit for about thirty minutes before needing to re-adjust her sitting position. (R. 483–484). Plaintiff stated that standing was painful, and that she could only stand for about five minutes before needing to sit again. (R. 483). Plaintiff stated: "I can't stand long periods of time,

3

but you can't always just sit, you want to have to stand sometimes. You feel like you should stretch[.]" (R. 505). Plaintiff further stated that it was "very difficult" for her to walk, and that she could only walk "short distances," such as going from one room to another, before needing to sit down. (R. 484). Plaintiff stated that she could lift ten pounds but could only lift and carry five pounds. (R. 484). Plaintiff also indicated that her hand grip strength was diminished due to rheumatoid arthritis. (R. 486).

Regarding activities of daily living, Plaintiff testified that she can clean her two-bedroom apartment by herself, but that she does the job in stages rather than all at once. (502). Plaintiff also stated that she can wash her dishes by hand. (R. 502). Plaintiff further indicated that she is able to drive her car, and able to walk from the parking lot of her apartment building to her first-floor apartment. (R. 502). Plaintiff told the ALJ that she does her own grocery shopping, by driving to a grocery store and buying everything that she needs for the month. (R. 501). Plaintiff indicated that she cooks her own meals because there is no one else to cook for her. (R. 503). Plaintiff indicated that she spends her free time watching television and playing card games on her computer. (R. 503).

Regarding her past work as a "skip tracer" for a collection agency, Plaintiff stated that it involved "probably 90% sitting." (R. 480–481). Plaintiff indicated that even with her medical problems, she could probably do the sitting aspect of that job, but that the difficult part for her would be getting to the job, and the times that she would need to get up and walk somewhere:

> Skip tracing you sit at a desk, you know, that's not that difficult for me to do, but it would be hard for me to get – get there and walk around the office if I have to go make copies or if I have to print out documents or anything like that, like if I had to go to the printing machine, I would have to walk, you

4

know, it would be hard.

(R. 506). Plaintiff is claiming disability as of November 1, 2011. Plaintiff stated, though, that after she was laid off in 2011, she would have continued working as a skip tracer if she could have found another position, but that no one hired her. (R. 506).

Plaintiff's counsel agreed with the ALJ that the record contained no opinion evidence from any of Plaintiff's treating doctors. (R. 476). Counsel also agreed that Plaintiff's conditions did not meet or medically equal a listed impairment.

Following the hearing, on July 18, 2018, the ALJ issued his decision. Preliminarily, the ALJ indicated that he would not consider records from University Neurology at Main[3] and Gastroenterology Associates, which had been received after the hearing, since Plaintiff had not complied with the relevant regulations. In that regard, the ALJ referred to the regulations and further stated:

> In this case, although the claimant identified evidence from these sources prior to the hearing, the letter did not explain how the evidence relates to the claimant's medical condition, work activity, job history, medical treatment, or other issues relevant to whether or not the individual is disabled. The letter "does not provide us with information specific enough to allow us to identify the written evidence and understand how it relates to whether or not the individual is disabled or blind …" In fact, the letter only identifies the source names, addresses, and dates of treatment, and does not mention the conditions the claimant sought treatment for with each provider. As a result, I was not informed of the evidence in accordance with the 5-day rule, and therefore, the evidence will not be considered.

(R. 338).

---

[3] As mentioned earlier, the ALJ had previously referred to missing records from Gastroenterology Associates and Buffalo Medical Group. However, the Court observes that the records from University Neurology at Main contain some diagnostic studies performed by Buffalo Medical Group, which may explain the apparent discrepancy.

5

Continuing with his decision, the ALJ found, in pertinent part, that Plaintiff had severe impairments consisting of "degenerative disc disease of the lumbar spine; obesity; and rheumatoid arthritis." (R. 340). Despite those conditions, the ALJ found that Plaintiff had the following residual functional capacity ("RFC") to perform work:

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can lift and carry 10 pounds occasionally and 5 pounds frequently; can sit for up to 6 hours in an 8-hour day; can stand or walk up to 2 hours in an 8-hour day; can stand or stretch up 1 minute after 30 minutes of sitting and will be off task for this 1 minute; can occasionally climb ramps or stairs but can never climb ladders, ropes or scaffolds; can occasionally balance, stoop, kneel and crouch, but can never crawl; can never be exposed to excessive vibration; and can face no more than occasional exposure to irritants such as odors, fumes, gases and poor ventilation.

(R. 343). The ALJ further found that Plaintiff could perform her past relevant work as a skip tracer, and alternatively, that considering Plaintiff's age, education and work experience, she could perform other jobs that the VE had identified. (R. 348). The ALJ's decision is now the Commissioner's final decision.

When discussing how he made his RFC finding, the ALJ discussed the medical evidence pertaining to Plaintiff's back pain, observing that

> the record documents the claimant's history of back pain, and imaging of the claimant has revealed straightening of normal lumbar lordosis with multi-level mild spondylotic changes with endplate spurring, a mild compression fracture, advanced degenerative disc disease at the L5-S1 level, early degenerative disc disease at the L3-L4 and L4-L5 levels, facet joint arthropathy, and diffuse osteopenia.

(R. 344). The ALJ further found that Plaintiff's medical conditions could reasonably be expected to cause her symptoms. However, the ALJ found that Plaintiff's statements

6

about the severity of her symptoms were not entirely credible, primarily due to the consistent lack of findings, on physical examinations by her treating doctors, of any physical or neurological deficits, as well the conservative nature of the treatment Plaintiff received and her statements about her activities of independent daily living. The ALJ also observed that Plaintiff had told her doctors that sitting relieved her pain; that her doctors had encouraged her to exercise; and that she had declined to take prescribed pain medications due to speculative concerns over possible side-effects. The ALJ indicated that all of those factors, taken together, undermined Plaintiff's credibility.

In making his RFC finding, the ALJ indicated that he gave "significant weight" to the opinion of consultative medical examiner Samuel Balderman, M.D. ("Balderman"). (R. 892–896). On January 22, 2016, Balderman had examined Plaintiff, observing that she presented with the "main medical problem[s]" of "thyroid disease, rheumatoid arthritis, and lumbar spine pain." (R. 892). Balderman noted: "[Claimant's l]umbar spine has been painful for ten years. The claimant has had MRI evaluations. Medications provide partial pain relief. The pain is constant, moderate in intensity, and variable in nature." (R. 892). Balderman reported, though, that Plaintiff appeared to be in no acute distress, with a normal gait, and that she did not use any assistive device to ambulate. (R. 893). Balderman stated that Plaintiff could not walk on heels or toes and that she could squat only 30%. (R. 893). After examining Plaintiff, Balderman reported essentially normal findings, including normal neurologic findings and full strength in all extremities; intact hand and finger dexterity; and intact grip strength. (R. 894). Regarding his musculoskeletal examination in particular, Balderman similarly reported essentially normal findings, including "good" range of motion in the spine and negative straight leg raising bilaterally.

(R. 894). Balderman diagnosed hypertension, obesity, hypothyroidism, rheumatoid arthritis and "degenerative disease of the knees." (R. 894). Balderman's medical source statement was as follows: "Mild to moderate limitation in repetitive bending and lifting. Moderate to marked limitation in kneeling and climbing, carrying, and prolonged walking." (R. 895).

In this action, Plaintiff now contends that the ALJ committed reversible error by relying upon Balderman's opinion, since Balderman did not review Plaintiff's MRI testing reports. On this point, Plaintiff describes the primary issue presented in this action as follows: "Did the ALJ err in relying on the opinion of Dr. Balderman, who did not have the benefit of Plaintiff's lumbar MRI?"[4] Plaintiff answers this question in the affirmative, asserting that the opinion of a consultative examiner who has not reviewed the claimant's diagnostic studies cannot constitute substantial evidence to support an RFC finding, since the examiner was necessarily lacking "necessary background information." Additionally, Plaintiff contends that because Balderman did not indicate that he reviewed Plaintiff's MRI studies, there as an obvious "gap in the record."[5]

Plaintiff makes several additional, related arguments. First, Plaintiff maintains that since Balderman did not include Plaintiff's back pain as one of his diagnoses, he did not "consider" that condition. As a further extension of that argument, Plaintiff contends that if Balderman did not consider Plaintiff's back pain, then his opinion did not relate to that

---

[4] Pl. Mem. of Law, ECF No. 9-1 at p. 2.
[5] *See, e.g.*, Pl. Mem. of Law, ECF No. 9-1 at p. 14 ("Not only was the ALJ bereft of an opinion interpreting the imaging results regarding the Plaintiff's lumbar spine, he lacked an opinion of a doctor who considered the Plaintiff's lumbar impairment. This harmed the plaintiff because imaging showed degeneration, however the ALJ lacked any opinion that evaluated said imaging.").

condition, and the ALJ therefore must have impermissibly relied on his own interpretation of the medical evidence (relating to Plaintiff's back pain) when fashioning the RFC. Finally, Plaintiff maintains that insofar as Balderman's opinion uses the terms "mild to moderate limitations," it is too vague to support the RFC determination.

Additionally, Plaintiff contends that the ALJ erred by declining to admit the late medical records. *See*, Pl. Mem. of Law (ECF No. 9-1) at p. 11 ("Second, the ALJ erroneously refused to admit records that were given to him after the hearing, finding the letter sent by Plaintiff's attorney insufficient under SSR 17-4p.").

Defendant responds that Plaintiff's arguments lack merit. Defendant states, for example, that Plaintiff is incorrect to argue that Balderman did not consider Plaintiff's back pain merely because he did not include "back pain" as one of his diagnoses. Rather, Defendant points out that Balderman specifically discussed Plaintiff's history of back pain in his report, including the fact that she had received MRI testing. Further, Balderman examined Plaintiff's spine and included limitations in his medical source statement that "implicated" Plaintiff's back pain. Defendant further contends that in making his RFC finding the ALJ properly considered the entire record, including the evidence showing consistently benign results of physical examinations, conservative treatment and activities of daily living. As for Plaintiff's secondary argument, that the ALJ erred in failing to admit the late documents, Defendant states that the argument is undeveloped, and that in any event Plaintiff has not shown that the ALJ erred in excluding the evidence.

The Court has considered the record and the parties' submissions.[6]

---

[6] On November 21, 2019, Plaintiff filed a reply brief. (ECF No. 17). The brief reiterates Plaintiff's original arguments concerning the ALJ's treatment of Balderman's opinion, but does not address Defendant's

9

## STANDARDS OF LAW

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive." The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

> The substantial evidence standard is a very deferential standard of review— even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered. *Id.*

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted).

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal

---

arguments concerning the ALJ's exclusion of evidence.

standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).

### Plaintiff Has Not Explained How the ALJ Allegedly Erred in Declining to Admit the Late Evidence

As already mentioned, Plaintiff contends that the ALJ erred by failing to admit two pieces of medical evidence that Plaintiff submitted after the hearing. However, as Defendant correctly points out, Plaintiff's "argument" on this point (which consists of a single sentence)[7] is a mere undeveloped assertion, that seems to have been included in Plaintiff's brief as an afterthought. In any event, Plaintiff's submissions do not explain why Plaintiff was entitled to have the excluded evidence considered by the ALJ, or how the excluded evidence might have resulted in a different outcome. Accordingly, the Court finds that Plaintiff's argument on this point is unsupported and lacking in merit.

### Plaintiff's Remaining Arguments Lack Merit

As discussed earlier, Plaintiff's remaining arguments pertain to the ALJ's treatment of Balderman's consultative opinion. However, these arguments also lack merit. For example, Plaintiff's primary argument – that it is necessarily error for an ALJ to assign significant weight to a consultative examiner's opinion where the examiner did not review the claimant's diagnostic testing – has been rejected by courts including the Second Circuit. *See, Wright v. Berryhill*, 687 F. App'x 45, 48 (2d Cir. 2017) ("[I]t was not reversible error for the ALJ also to give great weight to Dr. Wassef's opinion. Dr. Wassef personally examined the Plaintiff and reached conclusions consistent with the objective medical

---

[7] *See*, ECF No. 9-1 at p. 11.

11

evidence. Given these circumstances, the facts that Dr. Wassef's specialty is pediatrics and that his review did not include the Plaintiff's MRI results do not preclude the ALJ from assigning Dr. Wassef's opinion significant weight, especially in light of the other evidence in the record.") (sum. order); *see also, Martinez v. Comm'r of Soc. Sec.*, No. 17 CIV. 8949 (HBP), 2019 WL 1254842, at *25 (S.D.N.Y. Mar. 19, 2019) ("Plaintiff appears to argue that the ALJ erred in affording 'significant weight' to Dr. Johnston's opinion because Dr. Johnston did not review plaintiff's lumbar spine MRI or EMG studies before making his assessment. Plaintiff's argument is meritless. While it is unclear what, if any, prior medical records Dr. Johnston reviewed prior to his consultative examination of plaintiff, Dr. Johnston based his opinions on his physical examination, which revealed no neurological abnormalities, no muscle weakness or atrophy, normal reflexes, slightly limited range of motion in plaintiff's lumbar spine and full range of motion in all other extremities. Dr. Johnston's opinion that plaintiff had a moderate limitation with bending and lifting, and a mild limitation with prolonged sitting or standing is consistent with the overall record.") (citations to record and footnotes omitted).

Similarly, in this action, even assuming that Balderman did not review Plaintiff's diagnostic imaging relating to her back pain, his report references that she was complaining of such pain and that such diagnostic studies had been performed. Accordingly, Plaintiff's contention that Balderman did not "consider" her back pain is baseless, as are the related arguments mentioned earlier. Moreover, Balderman's report is based on his findings during his physical examination of Plaintiff, and those findings are consistent with findings by treating doctors who also examined Plaintiff in relation to her complaints of back pain. (R. 242, 249, 254). Consequently, it was not error for the ALJ to

assign significant weight to Balderman's opinion, even though Balderman did not review Plaintiff's diagnostic testing reports.

Lastly, Plaintiff's contention that Balderman's report was too vague to constitute substantial evidence is similarly lacking in merit. It may constitute error for an ALJ to rely on a medical opinion so vague that the ALJ is forced to rely "sheer speculation" in deriving specific functional findings from it. *See, e.g., Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013). Here, however, in the context of Balderman's entire report, which discussed both Plaintiff's subjective complaints and Balderman's own examination findings, his opinion that Plaintiff had "mild to moderate limitation in repetitive bending and lifting" and "moderate to marked limitation in kneeling and climbing, carrying, and prolonged walking" was not impermissibly vague.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings (ECF No. 9) is denied, Defendant's cross-motion (ECF No. 16) for the same relief is granted, and this matter is dismissed. The Clerk of the Court is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
      March 31, 2020

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge